# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| A BLACK HYUNDAI KONA 4 DOOR MOTOR VEHICLE WITH LOUISIANA LICENSE PLATE NO. 800 HFN CONTAINING AN APPLE MACBOOK LAPTOP COMPUTER | ) ) ) |

Case No.  24-mc-1784

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18, U.S.C., Section 2252(a)(2) | Distribution and Receipt of Child Pornography |
| 18, U.S.C., Section 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Brian Villaflor
*Applicant's signature*

_____
Special Agent Brian Villaflor, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___July 16, 2024___

_____
*Judge's signature*

City and state:  ___New Orleans, Louisiana___

Hon. Janis van Meerveld, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PLACE AND ITEMS TO BE SEARCHED

A motor vehicle, more fully described as a 2024 BLACK FOUR DOOR HYUNDAI KONA VEHICLE WITH LOUISIANA LICENSE PLATE NO. 800HFN which contains an Apple MacBook laptop computer.

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED**

Items evidencing violations of Title 18, United States Code, Sections 2252(a)(2) (distribution and receipt of child pornography) and 2252(a)(4)(B) (possession of child pornography).

### *Computers and Electronic Media*

1.    The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.

2.    Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives, secure digital (sd) cards, and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3.      Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4.      Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5.      Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.  Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

6.      Any computer or electronic records, documents, and materials referencing relating to the above-described offenses.  Such records, documents, or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video

tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7.    Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system.  The form that such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

8.    Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and Internet Service Providers.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, USB drives, secure digital (sd) cards, or other memory storage devices.

### *Documents, Computer, and Internet Records*

9.     Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

10.     Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11.     Records of address or identifying information for the target(s) of the investigation, and any personal or business contacts or associates of his or hers, (however and wherever written, stored, or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

12.     Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

13.     Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media (evidence of attribution).

### *Materials Relating to Child Erotica and Depictions of Minors*

14.     Any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors.

15.     Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

16.    Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

17.    Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, notes, and sexual aids.

### ***Photographs of Search***

18.    During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE** | * | |
| **APPLICATION FOR A SEARCH** | | **MISC. NO.  24-mc-1784** |
| **WARRANT FOR:** | * | |
| | | |
| **A BLACK HYUNDAI KONA 4** | * | **FILED UNDER SEAL** |
| **DOOR MOTOR VEHICLE WITH** | | |
| **LOUISIANA LICENSE PLATE NO.** | * | |
| **800 HFN CONTAINING AN APPLE** | | |
| **MACBOOK LAPTOP COMPUTER** | * | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Villaflor, hereafter referred to as your affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I am a Special Agent (SA) with U.S. Immigration and Customs Enforcement, Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge (SAC) New Orleans, Louisiana. I have been employed as a SA with HSI since March of 2022. I subsequently attended the Criminal Investigator Training Program (CITP) and Homeland Security Investigation Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) where I was trained to conduct investigations regarding the violation of federal statutes. Prior to my employment with HSI New Orleans as a SA, I was a SA with the United States Secret Service ("USSS"). During my career with the USSS, I was assigned to a Cyber Fraud Task Force, I have led, conducted, and participated in criminal investigations involving bank fraud, wire fraud, identity theft, and access device fraud. As such, I am authorized to investigate violations of laws of the United States and execute warrants issued under the authority of the United States.  I am currently assigned to the SAC New Orleans Cyber Crimes Group. This group investigates matters

involving the online exploitation of children, particularly in relation to Title 18, United States Code, Section 2252, which criminalizes the possession, receipt, and transmission of child pornography. During my assignment with the Cyber Crimes Group, I have led, conducted, and participated in the investigations and execution of search warrants for computers, electronic media, and other evidence, in cases involving child pornography and the sexual exploitation of children.

2.    I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for Title 18 offenses enumerated in Title 18, United States Code, Section 2516.

3.    This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    I am investigating the activities of the Internet Account registered to Lisa Pedone, but used by HENRY MICHAEL ROBIN (hereinafter "ROBIN"). Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2252(a)(2) (receipt and distribution of child pornography), and Section 2252(a)(4)(B) (possession of child pornography), have been committed by ROBIN using an Internet Account registered to Lisa Pedone. Accordingly, I am submitting this application and affidavit in support of a search warrant authorizing a search of a vehicle more fully described as a 2024 Black Four Door Hyundai Kona Vehicle With Louisiana License Plate No. 800HFN which is registered by ROBIN (hereinafter "the Vehicle") which contains his Apple MacBook laptop computer, as further described in *Attachment A*, and any other electronic media located during the execution of the search warrant.  Located within the vehicle  to be searched, I seek to seize evidence, fruits, and instrumentalities relating to violations of Title 18, United States Code, Section 2252 (distributing,

receiving, possessing, and accessing with intent to view child pornography), as more fully described in *Attachment B*.

## DETAILS OF THE INVESTIGATION

5. On or about May 6, 2024, Apache Junction Police Department (Arizona) Detective Steven Jeansonne conducted an undercover online investigation on the BitTorrent peer-to-peer file sharing network for offenders sharing child pornography. An investigation was initiated for a device at IP address 99.17.60.202, because it was associated with a torrent with the infohash: 61f6ce8c25ed2847373355c50468e94238667fd6. This torrent file referenced multiple files, at least one of which was identified as being a file of investigative interest to child pornography investigations.

6. Using a computer running investigative BitTorrent software, law enforcement authorities made a direct connection to the device at IP address 99.17.60.202, hereinafter referred to as "Suspect Device." The Suspect Device reported that it was using the BitTorrent client software, -BW1403- libtorrent/1.2.2.0.

7. On or about May 6, 2024, at approximately 01:19:50 GMT, law enforcement authorities successfully completed a download of files that the Suspect Device made available. The Suspect Device was the sole candidate for the downloads, and as such, the files were downloaded directly from IP address 99.17.60.202. The files were reviewed by your affiant, who determined that some met the definition of sexually explicit conduct involving minors as defined by Title 18, United States Code, Section 2256. Three of the downloaded files are described as follows:

   a. A file titled "**Falko_crying HD.mp4**", which is a video file, approximately five minutes and fourteen seconds long, depicts a prepubescent female child that is nude, blindfolded, and wearing fish net stockings. Two females are also nude in the video, one female is holding the nude child, and she begins to rub the child's buttocks. The female

3

then inserts her fingers into the child's vagina. The child is then visually and audibly crying. The female moves an adult male's erect penis towards the child. The child continues to cry.

      b.     A file titled "**Felixxx_142623RaJ_mom_41.jpg**", which is an image file, depicts a prepubescent male child nude. An adult female is seen performing oral sex on the child's penis.

      c.     A file titled "**s373jpg_3742354_25809616.jpg**" which is an image file, depicting a compilation of approximately ten scenes of prepubescent female children nude. One of the scenes depicts a female child posing with an adult male's penis, the child appears to have semen in her hair, forehead, and coming out from her mouth. The compilation includes the following title: "*Childpussy should always be tortured! Your pedo cum comes first – Hurt em!*"

8.     On or about June 10, 2024, Detective Jeansonne, referred your affiant a download he had obtained on or about May 6, 2024, during an undercover online investigation on the BitTorrent network from IP address 99.17.60.202.

9.     On or about June 10, 2024, your affiant conducted a query on the IP address 99.17.60.202 through the American Registry for Internet Numbers (ARIN). ARIN reported the IP address to be registered to AT&T Corp.

10.     On or about June 13, 2024, your affiant served a Department of Homeland Security Summons to AT&T Corp. to request subscriber information for IP address 99.17.60.202 on May 6, 2024, 01:19:50 GMT, the date and time of Detective Jeansonne's download.

11.     On or about June 13, 2024, your affiant received a response from AT&T Corp. indicating IP address 99.17.60.202 was assigned to subscriber Lisa Pedone at 3103 Audubon Trace, Jefferson, LA 70121.

12.     As the subscriber information for IP address 99.17.60.202 resolved back to internet service in the name of Lisa Pedone residing at 3103 Audubon Trace, Jefferson, LA 70121, your affiant has searched various records indices for information regarding the subject premises and its' residents. These searches have identified Lisa Pedone as the adult resident at the 3103 Audubon

Trace, Jefferson, LA 70121.  A search of public property records lists Lisa Pedone as "Primary Owner" of 3103 Audubon Trace, Jefferson, LA 70121.

13.     On July 12, 2024, your affiant presented a Federal Search Warrant to the Honorable Eva J. Dossier, United States Magistrate Judge, requesting authority to search the premises located at 3103 Audubon Trace, Jefferson, LA 70121, and to search and seize evidence related to violations of Federal child pornography laws.

14.     On July 16, 2024, HSI Special Agents, along with members of the Jefferson Parish Sheriff's Office, U.S. Secret Service and the Louisiana Bureau of Investigation, executed the Federal Search Warrant at 3103 Audubon Trace, Jefferson, LA 70121.

15.     Upon executing the search warrant of the PREMISES located at 3103 Audubon Trace, Jefferson, LA 70121, contact was made with ROBIN and Ana Pedone. Law enforcement entered the PREMISES to execute the search warrant and spoke with Pedone. Pedone indicated that she and ROBIN lived at the 3103 Audubon address, the residence is in her mother's name and that the internet service they have is secured.  She denied knowing that any child pornography was present in the residence or contained on any of their computers. Pedone stated to SA's that ROBIN has been living at the PREMISES since approximately 2019.

16.     During the execution of the search warrant, law enforcement officers observed a Sandisk 256 gigabyte USB thumb drive located in the living room. AP stated that the thumb drive belonged to ROBIN. Pursuant to the search warrant, an HSI Computer Forensics Analyst conducted a preview of the thumb drive and located various files of child sexual abuse material (CSAM) which was verified by an HSI Special Agent. Your affiant viewed the files and confirmed the thumb drive of ROBIN to contain sexually explicit conduct involving minors. Below is a description of one of the files:

5

a.    A file titled "**Mari 28.mp4**," which is a video file, approximately thirty seconds long, depicting a topless prepubescent female child. An adult male is masturbating with his erect penis near the child's mouth. During the course of the video, the adult male ejaculates onto the child's mouth.

b.  The thumb drive also contained personal information specific to **ROBIN**, including a picture of a prescription bottle with his name on it.

c.  Pedone stated that ROBIN owned an Apple MacBook. Later, after he was advised of Miranda Rights, ROBIN invoked but then voluntarily reengaged the law enforcement officers at the search scene and indicated to officers that his Apple MacBook laptop computer is presently located in his personal vehicle.

d.  HSI SA's seized ROBIN's thumb drive and other electronic devices in order to conduct a full computer forensic examination.

## COLLECTORS OF CHILD PORNOGRAPHY

17.    Based on your affiant's knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a.    Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.    Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, slides, and/or drawings or other visual media.  Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  Child pornography collectors typically retain pictures, films, photography, negatives, magazines, correspondence, books, tape recording, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e.      Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, address, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

### SEARCH AND SEIZURE OF COMPUTERS AND ELECTRONIC MEDIA

18.      Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to

be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a.      Electronic storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, usb "thumb" drives, secure digital (sd) cards, and others) can store the equivalent of thousands of pages of information.  Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.  This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search.  This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.      Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

19.     In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU).  In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential

for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

20.     Furthermore, when there is probable cause to believe that the computer and its storage devices are instrumentalities of crimes, within the meaning of Title 18, United States Code, Sections 2251 through 2256, they should all be seized as such.

**BITTORRENT, PEER-TO-PEER SOFTWARE PROGRAM & CHILD PORNOGRAPHY**

21.     A significant aspect of the Internet is peer to peer, or P2P. P2P file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. These P2P networks are commonly referred to as decentralized networks because each user of the network is able to distribute information and queries directly through other users of the network, rather than relying on a central server to act as an indexing agent, where all of the information is first deposited before it is distributed. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up files on a computer to be shared with others running compatible P2P software. However, only files that are specifically stored in shared folders are exchanged. Therefore, a user needs simply to move a file from one folder to another to stop the distribution across the Internet. Further, once a file or files are placed in a shared folder its distribution is dependent only on the machine being turned on and connected to the Internet.

22.     BitTorrent is one type of P2P file sharing software. Users of the BitTorrent network wishing to share new content will use a BitTorrent program to create a "torrent" file for the file or

group of files they wish to share. A torrent file is a small file that contains information about the file(s) and provides a method for a user to download the file(s) referenced in the torrent from other BitTorrent users. Torrent files are typically found as the result of keyword searches on Internet sites that host or link to them. Torrent files may be referenced by their "infohash," which uniquely identifies the torrent based on the file(s) associated with the torrent file. To download file(s) from other users on the BitTorrent network, a user typically obtains a torrent file. The BitTorrent software processes the information in the torrent file and locates devices on the BitTorrent network sharing all or parts or the actual file(s) being sought. The download of the content referenced in the torrent is achieved after the requesting computer and the sharing computer(s) directly connect to each other through the Internet using the BitTorrent software.

23.     One of the advantages of P2P file sharing is that multiple files may be downloaded at the same time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user downloading a movie file may actually receive parts of the movie from multiple computers. The advantage of this is that is speeds up the time it takes to download the file. It is possible to also download the file or files from only one computer.

24.     The BitTorrent Network bases all of its file shares on the Secure Hash Algorithm (SHA1). This mathematical algorithm allows for the digital fingerprinting of data. Once you check a file or files with a SHA1 hashing utility capable of generating this SHA1 value (the fingerprint), that will be a fixed-length unique identifier for that file. The SHA1 hash is the current Federal Information Processing and Digital Signature Algorithm. The SHA1 is secure because it is computationally infeasible for two files with different content to have the same SHA1 hash value.

25.    A P2P file transfer is assisted by reference to an Internet Protocol (IP) address.  This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session.  The IP address provides a unique location making it possible for data to be transferred between computers.

26.    Utilizing specialized software to search the BitTorrent network can result in the undercover officer receiving a list of IP addresses identifying locations where a computer has BitTorrent software installed, and individual files have been reported as available for download with a specific digital signature. By comparison of the SHA1 digital signatures, an affiant can conclude that a computer contains specific and known images of child pornography.

## LAW ENFORCEMENT ON P2P NETWORKS

27.    Law enforcement is present on P2P networks, and using investigative techniques, can identify child exploitation files which contain graphic content.  Entering search terms in P2P compatible software or on the internet yields a list of hash values for files which are available for download.  These hash values of files offered for download can be compared with hash values known to belong to movies or images of child sexual abuse.  By reviewing these movies or images of known child sexual abuse, it is possible to determine the exact content of the file available for download.  Once a matching set of hash values is identified, an investigator can submit a download request for the file known to contain movies or images of child sexual abuse.

28.    Investigators can also obtain the IP address of the person who shared the file(s). The IP address can be used to identify the user's probable physical location.

29.    By receiving either a file list or portions of a download from a specific IP address, an investigator can conclude a specific computer in a known geographic location is running a P2P client and possessing, receiving and/or distributing visual depictions of child pornography.

11

30.     The investigation of P2P file sharing networks is a cooperative effort of law enforcement agencies around the country.  Many agencies are associated with the Internet Crimes Against Children Task Force Program, Homeland Security Investigations, or the Federal Bureau of Investigation.  Many investigators involved in this effort are using the technology and methods described herein. This methodology has led to the issuance and execution of search warrants around the country resulting in many seizures of child pornography and arrests for possession, distribution, and receipt of child pornography.

## CONCLUSION

31.     Based on the above information, your affiant respectfully submits that there is probable cause to believe that evidence of criminal offenses, namely, violations of Title 18, United States Code, Sections 2252(a)(2) and 2252(a)(4)(B), is located in the **VEHICLE**, and on electronic media, as described above, and this evidence, more fully described in *Attachment B* to this affidavit, which is incorporated herein by reference, is also contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

32.     Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of the **VEHICLE**, as further described in *Attachment A,* and any computers, computer equipment, and/or any other electronic media located therein, and the seizure of evidence, fruits, and instrumentalities of criminal violations relating to the knowing

12

transportation, shipment, receipt, possession, production and distribution, of child pornography, as more particularly described in *Attachment B*.

Respectfully submitted,

*/s/ Brian Villaflor*
Brian Villaflor
Special Agent
Homeland Security Investigations

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed and sworn to before me on
this 16th day of July, 2024
in New Orleans, Louisiana.

HONORABLE JANIS VAN MEERVELD
UNITED STATES MAGISTRATE JUDGE

13

**ATTACHMENT A**

**PLACE AND ITEMS TO BE SEARCHED**

A motor vehicle, more fully described as a 2024 BLACK FOUR DOOR HYUNDAI KONA VEHICLE WITH LOUISIANA LICENSE PLATE NO. 800HFN which contains an Apple MacBook laptop computer.

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED**

Items evidencing violations of Title 18, United States Code, Sections 2252(a)(2) (distribution and receipt of child pornography) and 2252(a)(4)(B) (possession of child pornography).

### *Computers and Electronic Media*

1.      The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.

2.      Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives, secure digital (sd) cards, and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3.      Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4.      Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5.      Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.  Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

6.      Any computer or electronic records, documents, and materials referencing relating to the above-described offenses.  Such records, documents, or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video

tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7.      Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system.  The form that such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

8.      Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and Internet Service Providers.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, USB drives, secure digital (sd) cards, or other memory storage devices.

### *Documents, Computer, and Internet Records*

9.     Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

10.     Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11.     Records of address or identifying information for the target(s) of the investigation, and any personal or business contacts or associates of his or hers, (however and wherever written, stored, or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

12.     Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

13.     Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media (evidence of attribution).

### *Materials Relating to Child Erotica and Depictions of Minors*

14.     Any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors.

15.     Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

16.     Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

17.     Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, notes, and sexual aids.

### ***Photographs of Search***

18.     During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

SEALED

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    24-mc-1784 |
| | ) | |
| A BLACK HYUNDAI KONA 4 DOOR MOTOR VEHICLE WITH LOUISIANA LICENSE PLATE NO. 800 HFN CONTAINING AN APPLE MACBOOK LAPTOP COMPUTER | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____July 30, 2024_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____July 16, 2024; 5:15 p.m._____

*Janis van Meerveld*
*Judge's signature*

City and state:    _____New Orleans, Louisiana_____

Hon. Janis van Meerveld, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>   24-mc-1784 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

Subscribed, sworn to, and returned
before me this ____ day of _____, 20___.

_____
U.S. Judge or Magistrate

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

## **PLACE AND ITEMS TO BE SEARCHED**

A motor vehicle, more fully described as a 2024 BLACK FOUR DOOR HYUNDAI KONA VEHICLE WITH LOUISIANA LICENSE PLATE NO. 800HFN which contains an Apple MacBook laptop computer.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items evidencing violations of Title 18, United States Code, Sections 2252(a)(2) (distribution and receipt of child pornography) and 2252(a)(4)(B) (possession of child pornography).

### *Computers and Electronic Media*

1.     The authorization includes the search of electronic data to include deleted data, remnant data and slack space.  The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.

2.     Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data.  Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives, secure digital (sd) cards, and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3.    Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4.    Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5.    Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.  Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

6.    Any computer or electronic records, documents, and materials referencing relating to the above-described offenses.  Such records, documents, or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video

tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7.      Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system.  The form that such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

8.      Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and Internet Service Providers.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, USB drives, secure digital (sd) cards, or other memory storage devices.

### *Documents, Computer, and Internet Records*

9.    Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

10.    Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11.    Records of address or identifying information for the target(s) of the investigation, and any personal or business contacts or associates of his or hers, (however and wherever written, stored, or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

12.    Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

13.    Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media (evidence of attribution).

### *Materials Relating to Child Erotica and Depictions of Minors*

14.    Any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors.

15.    Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

16.    Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

17.    Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, notes, and sexual aids.

### ***Photographs of Search***

18.    During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.